This time we'll hear Vega v. Schneiderman. Good morning. Good morning. May it please the court, Jody Ratner on behalf of petitioner Emily Vega. I would like to first focus on the issue of custody by quoting the minutes from the sentencing proceeding. At page A-103 in the appendix, the sentence that was orally imposed on Ms. Vega was as follows. The court is sentencing you to a conditional discharge. The condition of that discharge is that imposition of two-year order of protection. That is the sentence that was imposed and that is the sentence that Ms. Vega believed that she was required to comply with to stay away from the complainant for two years, and she complied with that order. That sentence imposed a severe restraint on Ms. Vega's liberty because it was... Why is that? Because it amounts to a requirement that you stay away from, not harass, a specific person. And that's all it amounts to, unless I'm misunderstanding something. Well, the words of the order on appendix page A-109 are to stay away from. Harass is a separate consideration. So she was required to stay away from the complainant. Even an inadvertent sighting or interaction with the complainant could violate this order, and that was a situation that was likely to occur in this case where the complainant visited this apartment building every day. She didn't live there, but she dropped her children off there every single day. And this was the apartment building where Ms. Vega's close family member lived. Her children's grandmother lived there. It was her mother-in-law. It was also the... Are you saying that every order of protection places persons into custody? I am not saying that. What I'm saying is... Okay, so you want to draw the line. I would say that under the facts of this case... Where she should stay away from her husband's former lover. Where she should stay away from this individual. And this individual goes to the building every day where two of the incidents underlying this case happened, and where Ms. Vega's close family member also lived, one floor separated. They had seen each other in the hallway in the past. It was likely that she would risk violating this order. This is unlike other situations where, for example, in the case of Treisman, where it's a stay-away order from the defendant's daughter, but he could be anywhere else other than near his daughter. In this case, she must stay away from this particular person, whom she knows she is likely to run into in this apartment building. So she is effectively banished from bringing her children to visit their grandmother. She is effectively banished from going to visit her mother-in-law at this building. It amounts to all orders of protection where the person that you're supposed to stay away from happens to live in a place that you have other... In a neighborhood or a building that you have other reasons to frequent. Well, it's a case-by-case analysis. And I submit that in this case, the facts that are before this court, this was an effective banishment from a close family member's building. And as the majority opinion in Poudre states, that any impingement on a familial or a cultural location can be custody for purposes of the habeas statute. Well, the test, though, is... The test is that there be a significant restraint in the order of things. This seems to me to be an incidental restraint, if not a trivial one. Explain to me why this is significant. It's significant because this is the location where her children's grandmother lives. If her mother-in-law becomes sick and she needs to go help her, caretake her, it is likely that she will see the complainant in the hallway and violate... It's highly speculative. I submit that it's not speculative. This is the location where she ran into the complainant at least two times, which are what underlie the convictions in this case. Our cases, it seems to me, instruct us to look for a restraint, to look at the severity of the restraint, and that's a Poudre case we decided. This court recently decided Nowakowski, and in that case the majority decision found there was a severe restraint where he was required to go to community service for one day and then to attend court for one day. I would submit that in the dissent, Your Honor points it out, that he even had a say in choosing which day he wanted to go to do his community service. I would submit that two years being prevented from visiting, from bringing her children to their mother-in-law's home, from going to her mother-in-law's home, is much more severe than the restriction that the court found. I think that's sitting somewhat of an exaggeration on what she can do. Well, she would not go or she would risk violating the order of protection. She might choose to, but it is a strong risk that if she went there, she could run into the complainant and would then violate the order of protection and be subject to criminal contempt. Go ahead. Why isn't this case moved? This case seems to be . . . that argument has been raised. Let me have your views on why this is not moved. Again, under this court's recent decision in Nowakowski, the presumption of collateral consequences applies here because a misdemeanor is a criminal conviction. This court's majority ruling in Nowakowski also said that future sentence enhancement are typical collateral consequences that this court may look at, and in this case we submitted a future sentence enhancement in the situations where a conviction for something like criminal possession of a weapon in the fourth degree goes automatically from a misdemeanor charge to a felony charge for the mere fact that Ms. Vega had a prior criminal conviction. Is that something that you argued below, the enhancement possibility? We argued it in the papers for leave to this court, but I would also submit that this court may consider that because it is conducting a de novo review of the mootness issue. I was just wondering about that because Nowakowski is pretty clear that there's a presumption and you have to see whether the presumption has been rebutted, but if you're shifting ground, doesn't that make it difficult for your adversary to figure out what they should focus on? Well, my adversary had the chance to rebut that presumption in this court, and I submit that they didn't. The future sentence enhancement, it is what it is. She will be subject to that enhancement under the terms of the New York statute. Thank you. May it please the Court, Catherine Reno on behalf of Respondent Eric T. Schneiderman. This petition should be dismissed because this court does not have jurisdiction to review it. This case begins and ends on the determination of in custody. Petitioner, on the day that she filed her petition, her sentence of a one-year conditional discharge had expired 360 days earlier. Was it one year or two? It was a one-year sentence. On page A106 of the record is the court's written decision, and the court specifically says a one-year conditional discharge is opposed. Does the written sentence control or does the pronounced sentence control? The written sentence. The pronounced sentence was two years, right? No. The court, if I may, Your Honor. The court said on page A102, this is now the oral sentence, the court has issued its written decision finding the defendant guilty of the charges, and then on the following page, in light of the court's finding of your guilt, this court is sentencing you to a conditional discharge. So the court doesn't specify one year or two years. Where do I get the delusion that it was two years? I think from my adversary's statement, Your Honor. However, the court never articulated it. Incorrect. That it is incorrect. One year, not two. Absolutely. There was a two-year order of protection, but the sentence of a conditional discharge was only for one year. New York statutory law makes clear that for a misdemeanor or a violation conviction, the only length can be one year of a conditional discharge. And New York courts have consistently held that if there is a condition that the court imposes that exceeds that one year. This suit was filed a week before the end of the second year of the order of protection. So 360 days after the one-year conditional discharge had ended. So yes, the order of protection was still in effect. However, if that was violated, it would be a separate crime under New York penal law to 1550. And I would like to correct the record. The record is quite clear that Petitioner absolutely could go to this apartment building. The prosecutor said as much at the trial. What did the prosecutor say? The prosecutor, it's on page A, 71 to 73. There's a discussion where the prosecutor says that she's still allowed to go to this building. And the order of protection itself, on page A109, only says that she cannot go near the complainant's, her person, or her business, or her home. But in order to constitute a violation of an order of protection under the New York penal law, this requires intentional disobedience. So nearly running into her at this building where they both have relatives residing would not be a violation, would not be an additional crime. There would be no, unless she had some intent to disobey the order of protection. What specific language are you talking about? Because I'm looking at A72, and the question is, is Ms. Vega allowed to go to that address? And the answer is, as long as there's not an active order of protection. But there is an active order of protection. That's what you're referring to, A71 to 72. Where's the prosecutor say, of course she can go there, because there are kids, to take your kids there, to be watched by the grandmother? Hello. At the bottom of A72, Ms. Camacho, I guess, as long as it's- Ms. Camacho is the complainant, and so I think that's specifying- Well, I know this is where you're sending me. Complainant doesn't live there, so she's still- Wait a second. Let me see. Okay. You said, if I look here, I will see where the prosecutor said it's okay for her to go to 2676 Decatur Avenue, and I don't see it. Well, it explains that the complainant does not live there, she does not work there, and the order of protection says that the petitioner must stay away from where she lives. And the order of protection says she can't go there, but that's exactly what you're asking. The order of protection says that she can't go to the complainant's place of business or residence. She does not reside or work at this location. Therefore, she is allowed to go to this location. I thought the complainant does live at this- She does not. Her mother, the complainant's mother lives there, and the petitioner's mother-in-law lives there. So they both have relatives that live at the building. Neither petitioner nor complainant actually resides at this building. And I still am somewhat confused about the one-year, two-year situation. So the sentence itself is a one-year conditional discharge. But the order of protection that was imposed- Was a two-year order of protection. So during the one year of the conditional discharge sentence, if petitioner were to violate the order of protection, then the court would have jurisdiction to revoke that conditional discharge and impose a more significant sentence such as jail time. So then after the year expires, then what? Then that condition simply ends with the termination of the sentence. Meaning, if on day 367, petitioner were to violate the order of protection, the court would have no authority to change that conditional discharge, to revoke it, to modify it, to add any additional penalties because it simply expired after one year pursuant to New York statutory law. Therefore, if she did, after that one year, violate the order of protection, it would be a separate prosecution based on criminal contempt under the New York penal law. But it would be, it would not be a continuation or a modification of her actual one-year sentence that had been imposed. I didn't understand your adversary to be arguing to the contrary to this morning because she talked about the order of protection, order of protections generally, and didn't reference the fact that there were punitive sanctions, the possibility of punitive sanctions behind it by virtue of the conditional discharge. But maybe she just omitted that, but she didn't reference it. Well, an order of protection on its own is simply not a severe enough restraint to constitute in custody. No federal courts of appeals have held as much. In fact, the Ninth Circuit found exactly the opposite in Holmes v. Satterberg. Here, unlike in Nowakowski, the petitioner didn't have any affirmative obligation to be anywhere at any specific time or place. She simply had to stay away from one person who she admitted she didn't like. And that was only for two years. This was a negligible restriction. It wasn't banishment such as in Poudry where- At the time she filed this habeas petition, it was in the second year of the protective order. That's correct. And the protective order was not a component of the sentence. Correct. The sentence had expired. And it's not punitive. No, orders of protection are not punitive. Would- if she went to that building and if she encountered or saw this person, Ms. Camacho, would that violate the order of protection? No, not unless she was going out of her way to see her. And an element of the crime of criminal contempt is intentional disobedience of a court order. Now, we know that she- That could be viewed as intentionally putting yourself in a position where you will encounter that person. It could be, except that we have a very clear record that she goes there frequently because she has family there. So that it would be unlikely that charges would be brought. And if they were, she would have an extremely solid record that she has very- she has longstanding reasons to and a history of visiting her family there. So it would be quite unlikely. How do you read our recent decision in Nowakowski in terms of collateral consequences? In particular, your colleague points to the possibility of impeachment in a future proceeding and a sentence enhancement. It's saying these are collateral consequences and so this is not moot. Well, as was mentioned before, my adversary did not raise the issue of future possible impeachment until her brief in this court. She did not mention it in the Certificate of Appealability. So this is the very first time, unless the district court didn't have an opportunity to pass on this claim. And in her paper, it was a perfunctory mention, a one-liner. She doesn't expand on any of what this might actually look like or entail. And the Supreme Court, as was pointed out in the dissent in Nowakowski, has never applied this presumption to petty offenses, which is what we're discussing here, a violation and a B misdemeanor. This is a misdemeanor, right? This is a higher-level sentence and a violation. That's correct. It's a B misdemeanor, but it would be considered a petty offense under Supreme Court precedent as it only carries a maximum of three months. So this court in Nowakowski has now said that the presumption does apply to – haven't we, in effect, said it applies in the context of all misdemeanors since we've applied it in the context of a violation? Yes, Your Honor. Respectfully, a panel of this court did find that. Obviously, that is entitled to deference, but I would argue that it is not – it isn't in line with the Supreme Court precedent. And I would respectfully ask that Your Honors reconsider that. But the important – most important consideration is even if Petitioner can show this claim is not moot, she cannot show that she was in custody on the day she filed her petition, and that's a completely separate jurisdictional requirement. And therefore, the petition should be dismissed because this court doesn't have jurisdiction to review it. Thank you, Your Honors. Your Honors, a sentence cannot just expire of its own accord. Even if the sentence was – to back up, the sentence that was pronounced here was a conditional discharge with a two-year order of protection. That oral pronouncement under New York law is the sentence. Ms. Vega understood that she was required as her sentence to comply with a two-year order of protection. An order of protection is not a punishment under New York law. Under New York law, conditional discharge, it was the – And that ran out after one year. We keep going around and around. The conditional discharge ran out after one year. After that, all you had was the order of protection. That is not a punishment under New York law. I submit that the conditional discharge did not run out after one year because the court pronounced it – did not pronounce a one-year conditional discharge. Whether that is invalid under New York law, it was a valid order of the court that was never ruled otherwise. So it was in place for the full two years. Ms. Vega believed it was in place, and it was in place because it had never been ruled invalid. You would need a court ruling to state that that order, that judgment is invalid, and that did not happen here. The order of protection here was also the restraint that was imposed upon her. That was the condition imposed upon her. Like in Nowakowski, the condition that was imposed on him was to do community service. Let's turn to the merits just for one fleeting moment. You say on page 39 of your brief, you say the state court rejected the constitutional claim on the ground that it was not preserved. All right. Now, we owe a lot of deference to that, don't we? Yes. As in Cotto, the contemporaneous objection rule was misapplied in this case. This was a clear – the objection, the objection was – the judge could well have been assumed, could well assume, that I think she was acting under the New York Criminal Procedure Rule, Law 350103C. That – if that's the case, which the record does not support, if that was the case – Well, we don't know, do we? Because the objection was nonspecific. Your Honor, that statute is unconstitutional. Since 1975, that statute has been unconstitutional under Haring. If you made – if you told that, if somebody told that to the judge, then the judge could have considered that, right? I believe that the judge – the court cannot be ignorant of the law. This was 35 years later. I practiced law for 20 years, and that's a dangerous assumption. Well, whether they may or may not be, this court should not look at the merits of the case because of that court's ignorance. The law of the land is Haring. Haring requires a summation, and the fact that as the – Well, Haring may require a summation, but the State of New York requires that you make an objection addressed in such a way to the court – The practice commentaries to that statute even explain that the – this was a parallel statute to the one that was invalidated in Haring, and it was purely a legislative oversight that this one was also not amended, as was the other statute. And you think a counsel is absolved of the obligation to make an objection that incorporates that point? New York State law will find that objections are preserved, constitutional objections are preserved under similar circumstances, where it is so clear that the objection is a constitutional objection, merely stating Sixth Amendment or Constitution is not required under New York law, and that is exactly what happened here. Now, when you were giving your argument, your principal argument, you said that the in-custody requirement is satisfied because your client is in jeopardy of violating this order if she has incidental inadvertent contacts with the woman who got the order. And Ms. Reno said that there was a, if you will, intent requirement. Well, intent to stay away is staying away. Intent to harass would be a different scenario, but when the order says stay away, and she does not stay away from – The point was that incidental, accidental contact doesn't violate these orders. You've got to intend to confront the person. I believe that is a totally incorrect reading of the law as it applies to this order under the criminal contempt statute in New York. So she misled the court? I believe that's an incorrect interpretation of the case law and of the statutory law. Okay. Thank you. Thank you. We'll reserve decision.